Case 1:20-cv-25133-KMM   Document 1-3   Entered on FLSD Docket 12/16/2020   Page 1 of 25

**IN THE CIRCUIT COURT OF THE STATE OF FLORIDA, IN AND FOR
MIAMI-DADE COUNTY
CIVIL DIVISION
Case No. 2020-15998-CA-01(02)**

**ALTAGRACIA BANUCHI**, as Personal
Representative of the Estate of Edward
Blanton Foster III, and on behalf of the
Estate of Edward Blanton Foster III
and the survivors of the Estate, E.F.,
J.F., A.D.F., N.F., M.F., and A.B.F.,
     Plaintiffs,

vs.

**CITY OF HOMESTEAD**; **ANTHONY
GREEN**, individually and as an
employee of the City of Homestead,
     Defendants.
_____/

## FIRST AMENDED COMPLAINT

    This federal civil rights and state law tort action arises from the law

enforcement shooting of Edward Foster III on July 16, 2015, by defendant

Anthony Green, a City of Homestead Police Officer. Plaintiff Altagracia Banuchi,

as Personal Representative of the Estate of Edward Blanton Foster III, on behalf

of the Estate of Edward Blanton Foster III, and on behalf of the survivors of the

Estate, E.F. (a minor), J.F. (a minor), A.D.F. (a minor), N.F. (a minor), M.F. (a

minor), and A.B.F. (a minor), files this action seeking monetary, declaratory, and

injunctive relief, including damages stemming from Foster's death by being shot

in the back eight (8) times by Officer Green.

**EXHIBIT "3" TO
NOTICE OF REMOVAL**

**JURISDICTION AND PARTIES**

1.      This is an action for damages exceeding $30,000.00, not including costs, attorney's fees, and prejudgment interest.

2.      Venue is properly in Miami-Dade County, Florida because it is where all the parties reside and where the events complained of occurred.

3.      Plaintiffs have performed all conditions precedent, in accordance with §768.28(6), Florida Statutes, and all other requirements, before bringing this action.

4.      All conditions precedent have otherwise occurred, been performed, been met, been waived, would be futile, or are otherwise inapplicable.

5.      This complaint is based on the individual and concerted conduct of the named defendants in using the police power of the State of Florida to deprive Foster and his children of their constitutional and civil rights.

6.      The defendants' conduct, individually and jointly, under color of law, violated the rights of Foster and his children under the Fourth and Fourteenth Amendments to the United States Constitution as well as the statutes and laws of Florida.

7.      At all times material to this action, all defendants acted under color of state or local law.

**PARTIES**

8.      Plaintiff Altagracia Banuchi is the duly appointed Personal

Representative of the Estate of Edward Blanton Foster III (hereinafter the "decedent" or "Foster" or "Mr. Foster"), having been appointed Personal Representative by the Probate Division of the Circuit Court in and for Miami-Dade County on or about October 15, 2015. This action is brought by Altagracia Banuchi in her capacity as Personal Representative of the Estate of Edward Blanton Foster III, on behalf of the Estate, and on behalf of the survivors, E.F., J.F., A.D.F., N.F., M.F., and A.B.F., who are minors and are the four sons and two daughters of the decedent. Today and at the time of his death, all said survivors were under the age of twenty-five and were dependent on the decedent for support.

9.     At all relevant times, defendant City of Homestead ("City") is and was a duly organized public entity existing under the laws of the State of Florida. At all relevant times, City was the employer of defendant Green.

10.     At all relevant times, defendant Anthony Green ("Green") was a duly authorized employee and agent of City, who was acting under color of law within the course and scope of his duties as a police officer and with the complete authority and ratification of his principal, defendant City. Green is a citizen of the State of Florida residing in Miami-Dade County and is over the age of 18 years.

11.     The causes of actions contained in this complaint occurred and accrued in Miami-Dade County, Florida, in the Southern District of Florida.

## RELEVANT FACTS COMMON TO ALL COUNTS

I.      **Anthony Green's Interaction with Edward Foster.**

12.     On July 16, 2015, at about 4:00 pm, Green responded to a dispatch concerning an anonymous tip that a light skinned male was walking while armed with a gun, wearing red basketball shorts and a black or white shirt near Southwest 187 Avenue and 328 Street in Homestead.

13.     At the time, Foster, a black man, was walking home from the store when Green approached him while on duty and wearing his police-issued uniform and carrying his police-issued firearm. Green observed no criminal or suspicious behavior.

14.     Upon making eye contact with Foster, Green immediately drew his police-issued firearm and pointed it at Foster.

15.     Green pursued Foster behind an abandoned building at which point he  shot Foster eight times in the back.

16.     Green at no point feared for his life. Foster posed no threat of immediate harm to Green's life or anyone else's life or property.

17.     Law enforcement claim they saw a gun on the ground, lying west of Foster's feet. However, a mixture of DNA profiles was obtained from the grip and trigger of the retrieved Sig Sauer P226 9mm firearm. Based on swabs from Mr. Foster and the Sig Sauer P226, recovered at the scene, no conclusions were made regarding potential contributors when comparing the DNA profile obtained from

Foster.

18. The Sig Sauer P226, the extended magazine, and the 9mm cartridges were processed and examined for the presence of latent prints by law enforcement officials. No latent prints of value were developed.

19. After a five-year investigation, the State Attorney's Office issued its memo that did not determine (and could not determine) that Green's testimony was consistent with the physical evidence.

## II. Anthony Green's Prior Shootings and History of Unlawful Use of Force.

20. Foster's shooting is Green's sixth police shooting since 2005. Foster is the third shooting resulting in death.

21. In 2005, Green shot and killed an unarmed man named Jason Williams during a struggle outside a convenience store.

22. In 2007, Green shot and killed Anthony Cinotti after an altercation, witnessed by Green, between Cinotti and his girlfriend, in which Green claimed the lives of the girlfriend and her son were in danger.

23. A year later in 2008, Green again shot another man, a burglary suspect, twice in the stomach but fortunately the man lived.

24. In 2011, Green was investigated for a fourth shooting.

25. In 2013, Green was investigated for a fifth shooting.

26. The Homestead Police Department knew of Green's history of using deadly and excessive force but did nothing about it. Green was never disciplined

for any of the six shootings.

27.    After the Foster shooting, Green received a raise and an apparent promotion by the Homestead Police Department.

28.    Foster had six minor children at the time of his death.

## CAUSES OF ACTIONS AGAINST OFFICER GREEN.
### COUNT I - Federal Civil Rights — Fourth Amendment and Fourteenth Amendment Violation
### (Against Green)

29.    Plaintiffs reallege paragraphs 1 through 28.

30.    The shooting death of a black man in the back who was not accused of committing a crime, posed no threat of immediate harm, and was not stopped for any lawful basis, by an officer with a history of using deadly and excessive force against people living in Foster's community, is shocking to the conscience.

31.    Defendant   Green   committed   acts   that   violated   Foster's constitutional rights, including but not limited to, the right not to be subjected to excessive or unreasonable force, the right not to be subjected to unreasonable searches and seizures, the right to bodily integrity, the right to freedom of movement, and the right to terminate a police encounter not premised on reasonable suspicion or probable cause.

32.    Defendant Green's conduct caused Foster's injuries and death.

33.    Defendant Green's conduct was reckless, objectively unreasonable, and constituted an unreasonable search, seizure, and use of excessive in

violation of the Fourth Amendment to the United States Constitution as well as a violation of Foster's substantive due process rights. Defendant Green acted under color of law and as an employee of the Homestead Police Department in committing the conduct identified in this Count.

34.    Defendant Green acted with callous and deliberate indifference to Foster's federally protected rights.

35.    As a direct and proximate result of Green's violation of Foster's civil rights, Foster suffered damages, including mental anguish, bodily injury, pain and suffering, humiliation, and death.

36.    By reason of the acts, omissions, wrongs, and other conduct perpetrated by Green, individually, severally, and collectively, in depriving Foster of valuable constitutional rights, it was necessary for plaintiffs to retain the services of legal counsel to secure redress for the deprivation of Foster's constitutional rights. Thus, plaintiffs incurred substantial and reasonable attorney's fees and costs and is entitled to recover them from Green pursuant to 42 U.S.C. §1988 and under Florida law.

37.    For these reasons, Foster demands judgment in excess of Thirty Thousand Dollars ($30,000.00) against Green for damages, punitive damages, prejudgment interest on liquidated damages as allowed by law, costs of this action, reasonable attorney's fees, and any other relief this Court deems just and proper.

## COUNT II - Assault and Battery
### (Against Green)

38.    Plaintiffs reallege paragraphs 1 through 28.

39.    Defendant Green committed acts intended to cause Foster an apprehension of harmful or offensive contact.

40.    Defendant Green committed acts that caused apprehension in Foster that harmful or offensive contact was imminent.

41.    Foster suffered a harmful and offensive contact when he was shot by defendant Green.

42.    Defendant Green was acting in the scope and furtherance of his employment as a law enforcement officer.

43.    Defendant Green acted intentionally, in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

44.    As a direct and proximate result of Green's conduct, Foster suffered damages, including, bodily injury, pain and suffering, death, humiliation, loss of earnings, and loss of ability to earn money. The losses are permanent.

45.    For these reasons, Foster demands judgment against defendant Green for compensatory damages, punitive damages, prejudgment interest on liquidated damages as allowed by law, costs, and such other and further relief as the Court deems appropriate.

## COUNT III - False Imprisonment Claim
### (Against Green)

46.    Plaintiffs reallege paragraphs 1 through 28.

47.    Foster suffered a harmful and offensive seizure at gunpoint by defendant Green.

48.    Defendant Green did not have reasonable suspicion or probable cause to seize Foster at gunpoint.

49.    Defendant Green was acting in the scope and furtherance of his employment.

50.    Defendant Green acted intentionally, in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

51.    As a direct and proximate result of defendant Green's conduct, Foster suffered damages, including, bodily injury, pain and suffering, death, humiliation, loss of earnings, and loss of ability to earn money. The losses are permanent.

52.    For these reasons, Foster demands judgment against defendant Green for compensatory damages, prejudgment interest on liquidated damages as allowed by law, punitive damages, costs, and such other and further relief as the Court deems appropriate.

## CAUSES OF ACTION AGAINST CITY OF HOMESTEAD

## COUNT IV - Federal Civil Rights Violations[1]
### (Against City of Homestead)

53.     Plaintiffs reallege paragraphs 1 through 28.

54.     Defendant Green committed acts that violated Foster's constitutional rights.

55.     Defendant Green has not been disciplined for his unnecessary and excessive use of force.

56.     Prior to the Foster shooting, defendant Green has used deadly force against three others and excessive force not resulting in death against a fourth person. Other complaints have been lodged against defendant Green for excessive force, neglect of duty, unbecoming conduct, unreasonable search and seizure, illegal arrest, illegal seizures, and other misconduct.

57.     The actions and inactions of defendant City of Homestead and defendant Green were done pursuant to one or more of the following *de facto* policies, practices, and/or customs of the City that are so pervasive as to carry the force of law.

58.     The City has a *de facto policy*, practice, and/or custom of concealing

---

[1] The municipal claims are based on documentation received and reviewed, but plaintiffs' counsel is still awaiting public records requested from the City of Homestead Police Department pertaining to its investigations into citizen complaints and Green's prior shootings (July 28, 2020 and September 10, 2020). Pursuant to a stipulation, the plaintiffs were given up to thirty (30) days after completion of the State Attorney's investigation and receipt of documents to refile their federal claims.

and/or suppressing officer misconduct (both on-duty and off-duty misconduct), including the use of unlawful force and unlawful seizures. The concealment and suppression of the existence of misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct; failure to accept and act on citizen complaints against police officers; failure to investigate criminal conduct involving off-duty or on-duty officers; disparate treatment between an officer who is the subject of an investigation and a non-officer suspect; failure to promptly record witness statements or preserve evidence; failure to promptly interview the suspected officer; failure to properly and sufficiently discipline an officer, even when a complaint is sustained; fabrication of exculpatory evidence or destruction of evidence; and failure to initiate prompt disciplinary procedures related to the alleged misconduct, even when the allegation of misconduct is meritorious.

59.    Likewise, the City has a *de facto* policy, practice, and/or custom of deficient and biased procedures for investigating complaints, including excessive force and unlawful searches and seizures against on-duty officers.

60.    The City has a *de facto* policy, practice, and/or custom of failing to maintain accurate and complete records of complaints and investigations of misconduct.

61.    The City has a *de facto* policy, practice, and/or custom of failing to turn over and disclose complete records of complaints and investigations of misconduct.

62.     The City has a *de facto* policy, practice, and/or custom of a "code of silence" (also referred to as the "blue line" or "blue shield"). This code is an implicit understanding between and among members of the Homestead Police Department resulting in a refusal or failure to report instances of misconduct of which they are aware, including the use of unlawful force, despite their obligation to do so as sworn police officers. This includes police officers who remain silent or give false or misleading information during official investigations into allegations against a fellow officer related to misconduct that occurred on-duty or off-duty in order to protect themselves or their fellow officers from discipline, criminal prosecution, or civil liability.

63.     The acted in a manner consistent with a *de facto* policy, practice, and/or custom of a "code of silence" and "blue shield" when it chose not to immediately discipline defendant Green for the Foster shooting and other shootings.

64.     Further, the City acted in a manner consistent with a *de facto* policy, practice, and/or custom of a "code of silence" and "blue shield" when it engaged in conduct such as, but not limited to, the following:

a.      The City Internal Affairs ("IA"), and Police Department supervisors and superiors failed to conduct proper administrative investigations into the complaints against defendant Green both before and after the Foster shooting.

b.      The City, IA, and Homestead Police Department supervisors and

superiors failed to lawfully and/or properly adjudicate the administrative investigations into the complaints against defendant Green both before and after the Foster shooting.

c.     The City failed to properly investigate and/or discipline defendant Green prior to the Foster shooting and death.

d.     The City failed to defendant Green from its Police Department for his history of unlawful searches and seizures and use of excessive force predating July 13,2015, which includes five shootings.

e.     The City and its Police Department's policies and practices governing behavioral intervention are deficient in that they are non-disciplinary.

f.     The City wrongfully allowed defendant Green's gun to be returned to him in 2013, pending the resolution of a civil case and without a judicial order.

65.    The City and its Police Department supervisors and superiors knew its officers were initiating unlawful searches and seizures in communities of color as well as using excessive force against Homestead citizens and residents. It took no actions to train or discipline its police officers.

66.    Individually and collectively, the above described *de facto* policies, practices, and/or customs of the City proximately result in the culture and pervasive attitude among members of the Homestead Police Department, including defendant Green, that they may engage in misconduct against citizens, residents, and others with impunity, and without fear of official consequence. Its

police officers consider themselves "above the law."

67. The aforementioned *de facto* policies, practices, and/or customs of the City, individually and collectively, have been maintained and/or implemented with utter indifference by the City and has or have encouraged and/or motivated defendant Green to engage in the described conduct and wrongful acts against Foster, and therefore acted as the direct and proximate cause of the injuries sustained by the plaintiff.

68. The aforementioned *de facto* policies, practices, and/or customs of the City, individually and/or collectively, was the moving force behind defendant Green's described conduct, depriving Foster of his Fourteenth Amendment substantive due process right to bodily integrity.

69. The above acts and/or omissions of the City violated Foster's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

70. As a direct and proximate result of City's conduct, Foster was subjected to injury, including deprivations of his civil rights and a battery. Foster suffered damages, including mental anguish, bodily injury, pain and suffering, death, humiliation, embarrassment, loss of capacity for the enjoyment of life, loss of earnings, and loss of ability to earn money. The losses are permanent.

71. For these reasons, Foster demands judgment against City for compensatory damages, prejudgment interest on liquidated damages as allowed

by law, punitive damages, costs, attorney's fees, and such other and further relief as the Court deems appropriate.

**COUNT V - Federal Civil Rights Violations**
**(Against City of Homestead)**

72.     Plaintiffs reallege paragraphs 1 through 28.

73.     The City failed to maintain a proper or valid early warning system to detect and intervene with corrective measures officers with multiple personnel complaints and/or who exhibit patterns of potentially adverse performance, attitude, and behavior.

74.     Defendant City failed to maintain and/or utilize a valid early warning system that would have identified defendant Green as an officer with repeated offenses alleged against him and led to the proper discipline, re-training, supervising, or other appropriate intervention into his behavior, thereby preventing the Foster seizure and shooting from occurring, even though defendant City knew or should have known  its system or absence thereof did not work and/or was not proper and that the failure of such would cause and could cause injury to an individual such as Foster.

75.     Defendant City failed to identify the officers with the highest numbers of personnel complaints registered against them, despite knowing that the identification and proper retraining or discipline would prevent them from committing further acts that would cause and could cause injury to an individual

such as Foster.

76.    Defendant City failed to identify the officers with the highest number of personnel complaints, despite knowing that such failure could cause the subject officers to feel impervious and allowed to act with impunity and without fear of retribution.

77.    Defendant City failed to identify and/or failed to act on the fact that that defendant Green was in the top fraction of officers with the highest number of personnel complaints, despite knowing that such failure could and did cause Green to feel he could act with impunity and without fear of retribution.

78.    Defendant City failed to identify and/or failed to act on the fact that that defendant Green was in the top fraction of officers with the highest number of personnel complaints, despite knowing that such identification and proper retraining or discipline could prevent defendant Green from committing further acts that would cause and could cause injury to an individual such as Foster.

79.    Individually and collectively, the above described *de facto* policies, practices, and/or customs of the City proximately resulted in the culture and endemic attitude among members of its Police Department, including defendant Green, resulting in their misconduct against citizens, residents, and others with impunity and without fear of official or adverse consequences. The officers consider themselves "above the law."

80.    The aforementioned *de facto* policies, practices, and/or customs of

the City, individually and collectively, have been maintained and/or implemented with utter indifference by defendant City and has or have encouraged and/or motivated defendant Green to commit the aforesaid wrongful acts against Foster and therefore acted as the direct and proximate cause of the injuries sustained by the plaintiffs.

81.     The aforementioned *de facto* policies, practices, and/or customs of the City, individually and/or collectively, was the moving force behind defendant Green's conduct, depriving Foster  of his Fourteenth Amendment substantive due process right to bodily integrity.

82.     The above acts and/or omissions of the City violated Foster's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

83.     As a direct and proximate result of the City's conduct or inaction, Foster was subjected to injury, including deprivations of his civil rights and a battery. Foster suffered damages, including mental anguish, bodily injury, pain and suffering, death, humiliation, embarrassment, loss of capacity for the enjoyment of life, loss of earnings, and loss of ability to earn money. The losses are permanent.

84.     For these reasons, Foster demands judgment against City for compensatory damages, prejudgment interest on liquidated damages as allowed by law, punitive damages, costs, attorney's fees, and such other and further relief

as the Court deems appropriate.

## COUNT VI - Assault and Battery
### (Against City of Homestead)

85.     Plaintiffs reallege paragraphs 1 through 28.

86.     Defendant Green committed acts intended to cause Foster an apprehension of harmful or offensive contact.

87.     Defendant Green committed acts that caused apprehension in Foster that harmful or offensive contact was imminent.

88.     Foster suffered a harmful and offensive contact when he was shot by defendant Green.

89.     Defendant Green was acting in the scope of his employment.

90.     Defendant Green acted intentionally but not in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

91.     Pursuant to Florida Statute 768.28(9), the City is vicariously liable.

92.     As a direct and proximate result of defendant Green's battery, Foster suffered damages, including mental anguish, bodily injury, pain and suffering, death, humiliation, embarrassment, loss of capacity of the enjoyment of life, loss of earnings, and loss of ability to earn money. The losses are permanent.

93.     For these reasons, Foster demands judgment against the City for compensatory damages, prejudgment interest on liquidated damages as allowed

by law, costs, and such other and further relief as the Court deems appropriate.

## COUNT VII - False Imprisonment Claim
### (Against Green)

94.     Plaintiffs reallege paragraphs 1 through 28.

95.     Foster suffered a harmful and offensive seizure at gunpoint by defendant Green.

96.     Defendant Green did not have reasonable suspicion or probable cause to seize Foster at gunpoint.

97.     Defendant Green was acting in the scope and furtherance of his employment.

98.     Defendant Green acted intentionally but not in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

99.     Pursuant to Florida Statute 768.28(9), the City is vicariously liable.

100.    For these reasons, Foster demands judgment against defendant Green for compensatory damages, prejudgment interest on liquidated damages as allowed by law, punitive damages, costs, and such other and further relief as the Court deems appropriate.

## COUNT VIII - Negligent Use of Firearm
### (Against City of Homestead)

101.    Plaintiffs reallege paragraphs 1 through 28.

102.    This is a common law cause of action for negligent handling of a

Page 19 of 25

firearm and the negligent decision to use a firearm, as a separate and distinct count from an excessive force claim.

103.   On or about July 15, 2015, defendant Green breached his duty of care owed by negligently handling his firearm and negligently deciding to use a firearm against an unarmed person.

104.   Defendant Green's conduct of approaching Foster created a foreseeable zone of risk. Green owed a duty to all within the zone, including Foster, to act with reasonable care to lessen the risk or see that sufficient precautions were taken to protect others from the harm that the risk imposes.

105.   Defendant Green's negligent operation of his firearm directly and proximately caused Foster's wrongful injury, paralysis, death, and resultant damages.

106.   Pursuant to Florida Statute 768.28(9), the City is vicariously liable.

107.   As a direct and proximate result of the City's negligent supervision, retention, and training of defendant Green, Foster was subjected to injury, including deprivations of his civil rights and a battery. Foster suffered damages, including mental anguish, bodily injury, pain and suffering, death, humiliation, embarrassment, loss of capacity of the enjoyment of life, loss of earnings, and loss of ability to earn money. The losses are permanent.

108.   For these reasons, Foster demands judgment against the City for compensatory damages, prejudgment interest on liquidated damages as allowed

by law, punitive damages, costs, and such other and further relief as the Court deems appropriate.

### COUNT IX - Negligent Training and/or Supervision
### (Against City of Homestead)

109. Plaintiffs reallege paragraphs 1 through 28.

110. At all times material hereto, defendant City owed a duty to take reasonable care in the instruction, training, and supervision of its employees.

111. Defendant City breached its duty owed by several negligent acts, including but not limited to:

a.    Maintaining a policy of ignoring and/or covering up known or suspected misconduct by its officers, including excessive and unreasonable uses of force and unlawful searches and seizures;

b.    Maintaining a policy, plan, and practice of using Homestead Police Department resources to protect its employees from criminal, civil, and administrative consequences of their unreasonable searches and seizures and excessive use of force and to protect the City from embarrassment and accountability;

c.    Maintaining a policy, plan, and practice of controlling persons and use of force reporting, allowing 1) incomplete statement-taking, 2) incomplete and disingenuous analysis of the force used, 3) understatements of the force used, and 4) overstatement of the resistance that the use of force allegedly

responded to;

d.      Failing to meaningfully train and/or discipline officers with respect to the appropriate use of force during police-citizen encounters and the proper reporting of incidents that involved the use of force, even after learning of a steady increase in the number of sustained excessive force allegations against Homestead Police Department employees;

e.      Failing to properly investigate suspected incidents of excessive force and unreasonable searches and seizures.

112.   Defendant City breached its duty owed by negligently instructing, training, and supervising defendant Green in the reasonable and safe use of firearms in the performance of his duties as a law enforcement officer and in the reasonable and safe interaction with unarmed suspects without using unlawful violence.

113.   As a direct and proximate result of the City's negligent supervision, retention, and training of defendant Green, Foster was subjected to injury, including deprivations of his civil rights and a battery. Foster  suffered damages, including mental anguish, bodily injury, pain and suffering, death, humiliation, embarrassment, loss of capacity of the enjoyment of life, loss of earnings, and loss of ability to earn money. The losses are permanent.

114.   For these reasons, Foster demands judgment against the City for compensatory damages, prejudgment interest on liquidated damages as allowed

by law, punitive damages, costs, and such other and further relief as the Court deems appropriate.

## SURVIVOR CLAIMS

### COUNT X - Wrongful Death Caused by the Torts of Defendant Green
### (Against Green and City of Homestead)

115.   Plaintiffs reallege paragraphs 1 through 28.

116.   This Wrongful Death claim is brought against defendants City and Green.

117.   As alleged in paragraphs 27–105, incorporated herein, Green and City of Homestead committed tortious acts that caused the wrongful death of Foster.

118.   On July 16, 2015, while encountering Foster, defendant Green willfully, maliciously, unlawfully, and intentionally seized and ultimately shot and killed Foster without consent and against Foster's will.

119.   At the abovementioned date, time, and location, defendant Green willfully, maliciously, unlawfully, intentionally, and/or negligently caused bodily harm to Foster by shooting him to death.

120.   Defendant Green's intentional seizure, use of intentional excessive force, his unlawful shooting of Foster, his intentional infliction of bodily harm upon Foster, and/or negligence was/were the direct and proximate cause of Foster's wrongful death and resultant damages.

121.   Plaintiff Banuchi, as Personal Representative of the Estate of

Edward Blanton Foster III, and on behalf of the Estate of Edward Blanton Foster III and the survivors of the Estate, E.F., J.F., A.D.F., N.F., M.F., and A.B.F., makes a claim against Defendants Green and the City for damages directly and proximately caused by the wrongful death of Foster including but not limited to the following:

a.     All medical and funeral expenses;

b.     For the estate, loss of the prospective net accumulations that might reasonably have been expected but for the wrongful death of Edward Foster;

c.     For the minor survivors of the Estate, E.F., J.F., A.D.F., N.F., M.F., and A.B.F., loss of support, services, parental companionship, instruction, guidance, and for mental pain and suffering from the date of Edward Foster's death and into the future.

122.   For these reasons, plaintiff Banuchi, as Personal Representative of the Estate of Edward Foster III, deceased, demands judgment in excess of Seventy-Five Thousand Dollars ($30,000.00) against defendants Green and the City for damages, prejudgment interest on liquidated damages as allowed by law, punitive damages, prejudgment interest on liquidated damages as allowed by law, attorney's fees, costs of this action, and any other relief this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs request a jury trial as to all counts so authorized.

Respectfully submitted,

**MICHAEL A. PIZZI, JR. P.A.**
6625 Miami Lakes Dr. E., Ste 313
Miami Lakes, FL 33014
Tel: 305.777.3800
Fax: 305.777.3802
mpizzi@pizzilaw.com

By:   *S/ Michael A. Pizzi, Jr.*
      **MICHAEL A. PIZZI, JR.**
      Florida Bar No. 079545

**SELTZER MAYBERG LLC**
10750 NW 6th Court
Miami, FL 33168
Tel: 305.444.1565
Fax: 305.444.1665
menachem@smfirm.com

By:   *S/ Menachem M. Mayberg*
      **MENACHEM M. MAYBERG**
      Florida Bar No. 0596744

**KUEHNE DAVIS LAW, P.A.**
100 SE 2 Street, Suite 3105
Miami, FL 33131
Tel: 305.789.5989
Fax: 305.789.5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

By:   *S/ Benedict P. Kuehne*
      **BENEDICT P. KUEHNE**
      Florida Bar No. 233293
      **MICHAEL T. DAVIS**
      Florida Bar No. 63374

## CERTIFICATE OF SERVICE

I certify on November 13, 2020, I electronically filed this document with thee-Filing Portal, with service on all counsel of record.

By:   *S/ Benedict P. Kuehne*
      **BENEDICT P. KUEHNE**