United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Altagracia Banuchi, as personal representative of the estate of Edward Blanton Foster III, and on behalf of the survivors of the estate, E.F., J.F., A.D.F., N.F., M.F., and A.B.F., Plaintiff,<br><br>v.<br><br>City of Homestead and Anthony Green, Defendants. | Civil Action No. 20-25133-Civ-Scola |

### Order Denying Motion for Reconsideration, for Clarification, and Leave to Amend

Plaintiff Altagracia Banuchi, as personal representative of the estate of Edward Blanton Foster III, and on behalf of the survivors of the estate, E.F., J.F., A.D.F., N.F., M.F., and A.B.F. (together "Banuchi"), has sued Defendants the City of Homestead (the "City") and Homestead police officer Anthony Green for damages, as a result of Green's on-duty shooting and killing of Foster. (1st Am. Compl., ECF No. 1-3.) Banuchi's amended complaint was comprised of ten counts, the vast majority of which the Court disposed in ruling on the Defendants' motion to dismiss. (Order, ECF No. 23.) The Court also struck Banuchi's wrongful-death claim, lodged against both Defendants, set forth in count ten, finding it amounted to a shotgun pleading. (*Id.*) The Court afforded Banuchi leave to amend her complaint, with respect to her wrongful-death claims, and directed her, in doing so, to replead her § 1983 allegations against Green to reflect the Court's dismissal of her Fourteenth Amendment claim while her Fourth Amendment claim moves forward. (*Id.* at 13–14.) Banuchi timely filed her second amended complaint (2nd Am. Compl., ECF No. 26), now the operative complaint, but, a week later, also filed this motion for reconsideration, clarification, and leave to file a third amended complaint (Pl.'s Mot. for Recon., ECF No. 29.) The Defendants responded (Defs.' Resp., ECF No. 34) and Banuchi thereafter timely replied (Pl.'s Reply, ECF No. 40.) After review, the Court **denies** Banuchi's motion in its entirety (**ECF No. 29**).

1. **The Court denies Banuchi's request for reconsideration.**

Banuchi contends the Court should reconsider (1) its decision to dismiss her *Monell* claims (counts four and five) and, barring that, (2) its dismissal of

those claims *with*—as opposed to without—prejudice.[1] (Pl.'s Mot. for Recon. at 16–19.) As to the first issue, Banuchi complains the Court erred by applying a heightened pleading standard to her *Monell* claims. As to the second, Banuchi insists the Court improperly dismissed her claim with prejudice, failing to afford her notice prior to doing so. Both arguments miss their marks.

To begin with, "in the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy that is employed sparingly." *Gipson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007). A motion to reconsider is "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (Hoeveler, J.) (citation omitted). "Simply put, a party may move for reconsideration only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1247 (S.D. Ala. 2008) (quoting *Vidinliev v. Carey Int'l, Inc.*, No. CIV.A. 107CV762-TWT, 2008 WL 5459335, at *1 (N.D. Ga. Dec. 15, 2008)). However, "[s]uch problems rarely arise and the motion to reconsider should be equally rare." *Z.K. Marine Inc.*, 808 F. Supp. at 1563 (citation omitted). Certainly, if any of these situations arise, a court has broad discretion to reconsider a previously issued order. Absent any of these conditions, however, a motion to reconsider is not ordinarily warranted.

As to Banuchi's first point, she maintains the Court clearly erred when it required her to "allege other incidents, occurring on a widespread basis, involving factual situations that are substantially similar to the facts alleged in this case." (Pl.'s Mot. to Recon. at 17 (quoting Order at 7).) This is not a heightened pleading standard: it is simply a description of the facts Banuchi would need to plead to allow the Court to infer a municipal policy, as required for a *Monell* claim, based on her theory that the city has adopted a number of "de facto policies, practices, and/or customs . . . that are so pervasive as to carry the force of law." (1st Am. Compl. at ¶ 57; ¶81 (similar).) Simply put, Banuchi conflates a "heightened pleading standard" with the plain pleading requirements of Federal Rule of Civil Procedure 8. "That the law requires more than a single instance to establish a custom, policy, or practice on the part of a municipality, . . . does not equate to a heightened pleading standard."

---

[1] Banuchi clarifies in her reply that her motion for reconsideration regarding whether the dismissal should have been with or without prejudice is confined to only her *Monell* claims. (Pl.'s Reply at 10.)

*Woodworth v. City of St. Petersburg, Florida*, 8:18-CV-747-T-26TGW, 2018 WL 2267115, at *2 (M.D. Fla. May 17, 2018). Banuchi is not incorrect when she posits that "[t]o survive a motion to dismiss, [she] was only required to present sufficient facts establishing a plausible claim for municipal liability." (Pl.'s Mot. to Recon. at 17). But, as the Court found in its earlier order, Banuchi simply failed to do so. Instead, she relied on vague and conclusory assertions, devoid of factual support or accusations of force detached from any facts showing excessiveness. In her motion for reconsideration, she fails to explain why the Court should have considered these allegations sufficient to state a claim for *Monell* liability.

Banuchi's second allegation of error—that the Court improperly dismissed Banuchi's *Monell* claims *with* prejudice—is similarly meritless. Banuchi's position that the Court failed to provide notice prior to dismissing those claims with prejudice is plainly belied by the record: the order of dismissal was issued after ample briefing and was based on issues and arguments explicitly raised by the parties. Further, by the time the Court entered its order, the deadline for Banuchi to amend her complaint had passed. To be clear, "[a] Rule 12(b)(6) motion affords plaintiffs certain procedural protections such as[] notice and the opportunity to amend a complaint before the court rules on the motion." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). Without more, Banuchi had no reason to presume that a dismissal of her claims, on a 12(b)(6) motion, would be without prejudice. *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 929 (11th Cir. 2016) ("[U]nder the federal procedural rules, . . . dismissing with prejudice . . . is the default effect of a proper Rule 12(b)(6) dismissal.").

### 2. The Court denies Banuchi's motion for clarification.

In its order, the Court struck Banuchi's tenth count, raising claims under Florida's Wrongful Death Act, against both Defendants, because it amounted to a shotgun pleading. As the Court explained, "the relief sought in count ten is not set forth in a discrete and succinct manner such that the Defendants have fair notice of the claims against them." (Order at 13.) Accordingly, the Court afforded Banuchi the opportunity to replead her Wrongful Death Act claim—advising her that, as it had been pleaded, the Court found it "virtually impossible to determine which facts [were] intended to support" the claim. (*Id.*) Thereafter, Banuchi filed her second amended complaint in this action. In her motion here, Banuchi asks the Court for guidance on how she should present her wrongful-death claims, in light of her various theories of liability.

To begin with, the Court agrees with the Defendants that any clarification issued at this point would be moot: Banuchi has already filed her amended pleading, including her repleaded wrongful-death claims. Secondly, Banuchi provides no legal basis for the clarification she seeks nor does she point out any ambiguity or error in the Court's assessment of her Wrongful Death Act claim. And, finally, her request appears to amount to nothing more than a request for advice about how to plead her claim—a decidedly improper ask, especially when she is represented by counsel.

### 3. The Court denies Banuchi's motion for leave to file a third amended complaint.

Lastly, Banuchi seeks leave to file a third amended complaint, maintaining that good cause supports her request to do so after the deadline to amend has passed. In support, she points to (1) the Court's dismissal order's having been entered after the deadline to amend and (2) her diligence in seeking evidence to support the allegations she seeks to include in her third amended complaint. The Court finds both positions lacking.

As both parties acknowledge, where a party seeks leave to amend *after* the deadline to do so has passed, the movant must do more than argue leave is due under Rule 15(a). That is, the movant must also show "good cause" under Rule 16(b) in order to obtain the right to amend. *See Sosa v. Air Print Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The standard set forth in Rule 16(b) "precludes modification [of the scheduling order] unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *See Sosa*, 133 F.3d at 1418. Thus, "diligence is the key to satisfying the good cause requirement." *De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 672–73 (S.D. Fla. 2012) (Ungaro, J.). Only if "good cause" for an untimely amendment is shown under Rule 16(b), does Rule 15(a)'s instruction, that leave should be freely given when justice so requires, come into play. *See* Fed. R. Civ. P. 15(a)(2). While the standard under Rule 15(a) is lenient, "a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the [opposing party], and futility of the amendment." *See Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003) (citations omitted).

Even if Banuchi was able to satisfy the Rule 15(a) standard, the Court finds her showing of diligence lacking. Although Banuchi summarily points to evidence she only recently came into possession of, she fails to explain why any of that evidence was not available to her before the expiration of the deadline, despite her diligence. Indeed, it appears the evidence upon which she now

seeks to rely has been readily available, had she sought it, for years—accessible through public record requests as well as discovery.

The Court is also not persuaded by the district-court decisions Banuchi relies on for the proposition that good cause under Rule 16 can be shown by an order of dismissal that is entered after the expiration of the deadline to amend. The cases she cites to from this district are readily distinguishable. In one, for example, the Court found good cause, in part, where a magistrate judge had advised the plaintiff, in a report and recommendation, recommending dismissal, that the plaintiff "should be permitted to file an amended complaint if . . . it can cure the pleading deficiencies identified in the foregoing analysis." *Emess Capital, LLC v. Rothstein*, 10-60882-CIV, 2012 WL 13001838, at *2 (S.D. Fla. May 2, 2012) (Lenard, J.). Banuchi was given no similar signal here. In another case, the Court afforded a pro se plaintiff generous accommodation and, in addition, specifically made a separate finding of diligence, aside from the Court's dismissal order's being issued after the deadline to amend. *Watkins v. Bigwood*, 18-CV-63035, 2020 WL 4922359, at *3 (S.D. Fla. Aug. 21, 2020) (Bloom, J.). Here, though, Banuchi is represented by experienced counsel and so any such accommodation would be wholly unjustified. In yet a third case, upon which Banuchi relies, the availability of an additional avenue of recovery was not actually apparent until the Court issued its order on a motion to dismiss, after the expiration of the deadline to amend, opining on "a complex interpretation of contract law and [a] choice-of-law provision." *Perea v. Avnet, Inc.*, 12-CV-80257, 2012 WL 12868748, at *2 (S.D. Fla. Sept. 14, 2012) (Ryskamp, J.). In contrast, here, the Court's order of dismissal has not unearthed any new claims of which Banuchi was understandably unaware. Because of these distinguishing aspects, the Court does not find these district-court cases at all persuasive. This is especially so in light of the Eleventh Circuit's repeated "reject[ion of] the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend." *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018).

In sum, Banuchi has failed to carry her burden of establishing the diligence necessary to satisfy the good-cause requirement. *Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241, n. 3 (11th Cir. 2009) (lack of diligence finding triggered by "a [party's] failure to seek the information it needs to determine whether an amendment is in order"). Accordingly, the Court does not reach whether her amended pleading would be justified under Rule 15. *See De Varona*, 285 F.R.D. at 672 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end.")). Her request to amend her complaint, yet again, is thus denied.

## 4. Conclusion

For the foregoing reasons, Banuchi's motion for reconsideration, clarification, and leave to amend is **denied** in its entirety (**ECF No. 29**). Additionally, Banuchi also requests a stay of the deadline for the Defendants to respond to her second amended complaint. Based on the denial of her motion here, and because the Defendants have already responded to the second amended complaint, the Court **denies** her motion for a stay **as moot** (**ECF No. 30**).

**Done and ordered**, in Miami, Florida, on September 17, 2021.

Robert N. Scola, Jr.
United States District Judge