United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Altagracia Banuchi, as personal representative of the Estate of Edward Blanton Foster III, and on behalf of the Estate of Edward Blanton Foster III and the survivors of the Estate, E.F., J.F., A.D.F., N.F., M.F., and A.B.F., Plaintiff, | ) ) ) ) ) ) ) ) | Civil Action No. 20-25133-Civ-Scola |
| v. | ) ) ) | |
| City of Homestead and Anthony Green, Defendants. | ) ) | |

**Order Granting in Part and Denying in Part**
**Second Motion to Dismiss**

Plaintiff Altagracia Banuchi, as personal representative of the estate of Edward Blanton Foster III, and on behalf of the survivors of the estate, E.F., J.F., A.D.F., N.F., M.F., and A.B.F. (together "Banuchi"), has sued the City of Homestead (the "City") and police officer Anthony Green for damages, as a result of Green's on-duty shooting and killing of Foster. (2nd Am. Compl., ECF No. 26.) Banuchi's first amended complaint (1st Am. Compl., ECF No. 1-3) encompassed ten counts, the vast majority of which the Court disposed of in ruling on the Defendants' first motion to dismiss. (Order on 1st Mot., ECF No. 23.) In that order, the Court also struck Banuchi's wrongful-death claim, lodged against both Defendants, as set forth in count ten, finding it amounted to a shotgun pleading. (*Id.*) The Court afforded Banuchi leave to amend her complaint, with respect to her wrongful-death claims, and directed her, in doing so, to replead her § 1983 allegations against Green to reflect the Court's dismissal of her Fourteenth Amendment claim (but not her Fourth Amendment claim). (*Id.* at 13–14.) Banuchi timely filed her second amended complaint (2nd Am. Compl., ECF No. 26), but, a week later, also filed a motion for reconsideration, clarification, and leave to file a third amended complaint (Pl.'s Mot. for Recon., ECF No. 29). The Court denied that motion in its entirety, rendering the second amended complaint Banuchi's operative pleading. (Order on Mot. for Recon., ECF No. 51.)

Banuchi's second amended complaint (at times referred to herein as, simply, the "complaint") has two counts, denominated, unconventionally, count one and count ten. Count one is Banuchi's excessive-force claim, under the

Fourth Amendment, against Green. Count ten is lodged under the Florida Wrongful Death Act and is comprised of five subparts: two against Green (one for wrongful death caused by (A) negligence and the other by (B) battery); and three against the City (one for wrongful death caused by (C) battery, another by (D) negligent use of a firearm, and the third by (E) negligent training, supervision, and retention). The Defendants now seek dismissal of count ten, or a subset of its parts, for a number of reasons: they say count ten, in its entirety, is, again, a shotgun pleading; subpart (A) is time barred; subparts (A), (D), and (E) all fail to state a claim; and the City is immune from liability as to the claims in subpart (E). The Defendants also argue certain damages claims should be struck from Banuchi's prayer for relief. Banuchi opposes the motion (Pl.'s Resp., ECF No. 36) and the Defendants have replied (Defs.' Reply, ECF No. 39). After careful review, the Court **grants, in large part, and denies, in small part** (as to Banuchi's claims for damages), the Defendants' motion to dismiss. (**ECF No. 33**).

## 1. Background[1]

On July 16, 2015, at about 4:00 pm, Green, on duty, as a Homestead Police Department employee, and wearing his uniform, responded to a dispatch concerning an anonymous tip that a "light skinned" male was walking while armed with a gun. (2nd Am. Compl. ¶¶ 10, 12–13.) According to the dispatch, the subject was wearing red basketball shorts and a black or white shirt and was near Southwest 187th Avenue and 328th Street in Homestead, Florida. (*Id.* ¶ 12) At that time, Foster, a black man, was walking home from a store. (*Id.* ¶ 13.) As Green approached Foster, Green observed no criminal or suspicious behavior. (*Id.*) Upon making eye contact with Foster, Green immediately drew his police-issued gun and pointed it at Foster. (*Id.* ¶ 14.) Foster headed behind an abandoned building, with Green in pursuit. (*Id.* ¶ 15.) Once behind the building, Green shot Foster eight times in the back, resulting in his death. (*Id.* ¶¶ 15, 31.)

Banuchi says Green "at no point feared for his life" and that "Foster posed no threat of immediate harm to Green's life or anyone else's life or property." (*Id.* ¶ 16.) Other officers involved, however, said they saw a gun on the ground, lying west of Foster's feet—and, indeed, a gun was recovered from the scene. (*Id.* ¶ 17.) Although a mixture of DNA was obtained from the grip and trigger of the gun, no conclusions were made regarding potential

---

[1] The Court generally accepts the Plaintiff's factual allegations as true for the purposes of evaluating the Defendants' motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

contributors when that mixture was compared to Foster's DNA. (*Id.*) Nor were any viable fingerprints developed from the gun's extended magazine or cartridges. (*Id.* ¶ 18.) After a five-year investigation, the state attorney's office issued a closeout memo about the incident. (*Id.* ¶ 19.) That report did not make an affirmative finding that "Green's testimony"[2] was consistent with the physical evidence. (*Id.*)

Since 2005, Green has been responsible for six police shootings, including Foster. (*Id.* ¶ 20.) Foster is Green's third shooting that has resulted in death. (*Id.* ¶¶ 20, 56.) In 2005, Green shot and killed an unarmed man during a struggle outside a convenience store. (*Id.* ¶ 21.) In 2007, Green shot and killed another man, as he witnessed an altercation between the man and his girlfriend. (*Id.* ¶ 22.) With respect to that shooting, Green said he believed the girlfriend and her son's lives were in danger. (*Id.*) A year after that, in 2008, Green shot a third man, a burglary suspect, twice in the stomach. (*Id.* ¶ 23.) That shooting was not fatal. (*Id.*) In 2011 and then again in 2013, Green was investigated regarding two other shootings. (*Id.* ¶¶ 24–25.) Green was never disciplined for any of these shootings, or the shooting of Foster. (*Id.* ¶ 26.) In fact, after the Foster shooting, Green received a raise and an apparent promotion from the Homestead Police Department. (*Id.* ¶ 27.)

## 2. Legal Standards

A court considering a motion to dismiss, filed under Rule 12(b)(6), must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if it fails to nudge its "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) further requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable

---

[2] The Complaint doesn't specify what this testimony is or in what context Green provided it.

to a single set of circumstances." Fed. R. Civ. P. 10(b). "A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).

### 3. Analysis

As an initial matter, the Defendants contend Banuchi's latest attempt to plead her claims is a shotgun pleading, much like the pleading that proceeded it. While the Court agrees Banuchi's complaint is not a model of clarity, it is not so poorly drafted or muddled that the court is unable to discern Banuchi's claims or the facts upon which each is alleged to be grounded. To that point, the operative complaint now spans only sixteen pages and the bulk of the common factual allegations are spread across only about twenty short paragraphs, in total. The Court is not left, therefore, with the "herculean undertaking" of "sift[ing] through a morass of irrelevant facts" to determine whether Banuchi's claims can withstand the Defendant's motion to dismiss. *Id.* at 1328–29 (Tjoflat, J., concurring). Instead, the Court finds the complaint is now short (enough) and plain (enough) for the Court to determine whether Banuchi's claims should proceed.

Additionally, Banuchi submits the Defendants have waived various arguments by failing to raise them in their earlier motion to dismiss, targeting Banuchi's first amended complaint. In particular, Banuchi argues the Defendants have waived their arguments that (1) Banuchi failed to state a wrongful-death claim based on the City's vicarious liability for Green's negligent use of a firearm (subpart (D) of count ten); (2) Banuchi failed to state a wrongful-death claim with respect to the City's negligent training, supervision, or retention (subpart (E) of count ten); and (3) the Court should strike Banuchi's claims for punitive damages and prejudgment interest against the City and for attorneys' fees against both Defendants. With respect to the first two points, the Court is not persuaded that the City has waived its 12(b)(6) arguments. The Court agrees, however, that the Defendants have waived their arguments regarding Banuchi's prayer for relief.

As Banuchi points out, under Rule 12(g), a party filing a successive motion for dismissal, under Rule 12, may not raise defenses or objections, subject to certain exceptions, that were available to that party when it submitted its earlier motion. Fed. R. Civ. P. 12(g)(2). "The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground." *Brooks v. Warden*, 706 F. App'x 965, 969 (11th Cir. 2017) (quoting *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012)). This prohibition can apply "even where," as here, "an intervening amended complaint is filed."

*Ruehling v. Armstrong*, 8:12-CV-2724-T-35TGW, 2014 WL 12617962, at *2 (M.D. Fla. Nov. 3, 2014). Here, however, the Court readily found that count ten's allegations, in the prior pleading, amounted to a shotgun pleading. (Order on 1st Mot. at 12–13.) In making that assessment, the Court noted that, with respect to that count, the Court found it "virtually impossible to determine which facts are intended to support Banuchi's wrongful-death claim." (*Id.* at 13.) The Court went further, remarking that count ten was pleaded in such a way that the Defendants did not "have fair notice of the claims against them." (*Id.*) As such, the Court would be hard pressed to now say that the Defendants had "reasonable notice of all the bases for asserting various Rule 12(b) defenses," with respect to the amended count ten, at the time they presented their first motion to dismiss. § 1388 Application of Rule 12(g)— Limited to Motions that Were "Available," 5C Fed. Prac. & Proc. Civ. § 1388 (3d ed.)

Furthermore, to the extent the subparts of count ten are, in part, simply reconstituted from stand-alone counts that Banuchi had presented in her first amended complaint, the Court still does not find the 12(b) defenses were "available" at the time the Defendants filed their initial motion. In Banuchi's earlier pleading, her separate claims against the City for negligent use of a firearm and negligent training, retention, and supervision were improperly pleaded, as standalone claims, independent from her wrongful-death claim. And while Banuchi may have tangentially incorporated those claims, en masse, by reference, into her wrongful-death claim, she did so only vaguely and certainly imperfectly. Until Banuchi clearly and explicitly set out her wrongful-death claims, distinctly identifying the theories upon which they were each grounded, it was not reasonable for the Court to expect the Defendants to be on notice of the universe of ways by which Banuchi might have failed to state a claim.

With respect to Banuchi's prayer for relief, however, nothing material has changed from the prior pleading to the second amended complaint. Both paragraphs are virtually identical, seeking, against both Defendants, "punitive damages, prejudgment interest on liquidated damages as allowed by law, [and] attorney's fees." (1st Am. Compl. ¶ 122; 2nd Am. Compl. ¶ 83.) The prayer for relief, in both pleadings, is self-contained and nothing prevented the Defendants from raising their objections to Banuchi's damages claims in their first motion to dismiss—there is nothing about the lack of clarity regarding the substantive basis for Banuchi's wrongful-death claim that made it impossible for the Defendants to formulate their objections to the damages request. They could have raised those objections then and, by failing to do so, are precluded from doing so now, in this subsequent motion to dismiss.

With these preliminary matters disposed of, the Court turns to the substance of the parties' remaining arguments.

## A. Banuchi fails to state a claim against either Green or the City for wrongful death based on alleged general negligence or negligent use of a firearm.

Within subparts (A) and (D) of count ten, Banuchi alleges Foster's death was caused by, respectively, Green and the City's negligence. (2nd Am. Compl. ¶¶ 41–47, 67–72.) However, and as the Defendants point out, Banuchi's factual allegations all set forth intentional, as opposed to negligent, conduct. Indeed, Bancuhi fails to allege a single fact that indicates Green's conduct was accidental or that he acted upon some sort of misapprehension of the situation. Instead, every single factual allegation evinces intentional, purposeful actions, not a lack of due care: Banuchi says that as soon as Green made eye contact with Foster, without having observed *any* criminal or even suspicious behavior, Green immediately drew his gun, pointing it at Foster, chased Foster behind a building, and then shot him eight times in the back. (2nd Am. Compl. ¶¶ 13–15.) All the while, says Banuchi, "Green at no point feared for his life" and Foster never posed any threat of immediate harm to Green or anyone else or even anyone else's property. (*Id.* ¶ 16.) Furthermore, even many of Banuchi's conclusory claims portray the Defendants as acting intentionally. For example, Banuchi says that, "while encountering Foster, defendant Green *willfully, maliciously, unlawfully, and intentionally* seized and ultimately shot and killed Foster." (*Id.* ¶ 44 (emphasis added).) Similarly, in subpart (D), against the City, Banuchi describes Green, again, as having "acted *intentionally.*" (*Id.* ¶ 71 (emphasis added).)

As the Defendants point out, Florida law is well settled that "it is not possible to have a cause of action for 'negligent' use of excessive force because there is no such thing as the 'negligent' commission of an 'intentional' tort. *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996). In response, Banuchi points to her perogative to "state as many separate claims or defenses as [she] has, regardless of consistency" as provided for under Rule 8(d)(3). (Pl.'s Resp. at 8–9 (quoting Fed. R. Civ. P. 8(d)(3)).) She further argues that her negligence claims should proceed because "[a]lternative theories can be in conflict, as the evidence obtained during discovery may support one theory but not the other." (Pl.'s Resp. at 9.) While this may be a correct pronouncement of the law, it is inapplicable here: Banuchi has not supplied any facts that would support a negligence theory of liability and, in fact, all the facts she does present affirmatively allege purely intentional acts. Any allegations of negligence are presented in only the most conclusory and summary fashion:

"This alternative theory alleges negligent handling of a firearm and the negligent decision to use a firearm." (2nd Am. Compl. ¶ 67); "[D]efendant Green breach his duty of care owed by negligently handling his firearm and negligently deciding to use a firearm against an unarmed person." (*Id.* ¶ 68); "Defendant Green's negligent operation of his firearm directly and proximately caused Foster's wrongful injury, paralysis, death, and resultant damages." (*Id.* ¶ 70); and "The City's negligent supervision, retention, and training of defendant Green was/were the direct and proximate cause of Foster's wrongful death and resultant damages." (*Id.* ¶ 72.) So, although, in theory, Banuchi *could* set forth claims for both intentional conduct along with negligence allegations, should the facts alleged support it, she has not actually done so here. Accordingly, the Court dismisses Banuchi's negligence claims under subparts (A)[3] and (D) for her failure to state a claim.

**B. Banuchi's threadbare claims fall short of stating a claim for negligent training, retention, or supervision.**

The Defendants maintain Banuchi's conclusory and vaguely presented allegations fail to supply actual facts that would support her claims against the City for negligent training, retention, or supervision. (Defs.' Mot. at 12.) A review of the complaint confirms their position. For example, Banuchi alleges the City "knew of Green's history of using deadly and excessive force but did nothing about it." (2nd Am. Compl. ¶ 26.) While Banuchi supplies facts showing that Green was indeed involved in five shootings (*id.* ¶¶ 20–25), in addition to the shooting of Foster, she neglects to present any actual facts showing that those shootings implicated Green's use of excessive force, never mind that the City was aware that those shootings implicated Green's use of excessive force.

Continuing, the specific allegations under subpart (E) itself are similarly deficient. For instance, without any supporting facts or details, Banuchi alleges the following regarding the City's purported policies that resulted in Green's shooting of Foster. She says the City beached its duty of care by maintaining policies "of ignoring and/or covering up known or suspected misconduct by its officers, including excessive and unreasonable uses of force and unlawful searches and seizures" (*id.* ¶ 75); "of using [City] resources to protect its employees from [the] consequences of their unreasonable searches and seizures and excessive use of force and to protect the City from embarrassment and accountability" (*id.* ¶ 76); and "of controlling . . . use of force reporting, allowing 1) incomplete statement[ ]taking, 2) incomplete and disingenuous

---

[3] The Court dismisses Banuchi's claim against Green under subpart (A) for the alternative reason that, as even Banuchi concedes, it is time barred. (*See* Defs.' Mot. at 7–8; Pl.'s Resp. at 4.)

analysis of the force used, 3) understatements of the force used, and 4) overstatement of the resistance that the use of force allegedly responded to" (*id.* ¶ 77). Similarly, regarding her claim that the City's negligent training and supervision caused Foster's death, Banuchi alleges the City "fail[ed] to meaningfully train and/or discipline officers with respect to the appropriate use of force during police-citizen encounters and the proper reporting of incidents that involved the use of force, even after learning of a steady increase in the number of sustained excessive force allegations against [City] employees" (*id.* ¶ 78); and "fail[ed] to properly investigate suspected incidents of excessive force and unreasonable searches and seizures" (*id.* ¶ 79). With respect to Green's use of a firearm, Banuchi likewise alleges, without any specificity or supporting factual details, that the "City breached its duty owed by negligently instructing, training, and supervising defendant Green in the reasonable and safe use of firearms in the performance of his duties of a law enforcement officer and in the reasonable and safe interaction with unarmed suspects without using unlawful violence." (*Id.* ¶ 80.) And, finally, the sum total of Banuchi's allegations with respect to proximate cause are as follows: "The City's negligent supervision, retention, and training of defendant Green was/were the direct and proximate cause of Foster's wrongful death and resultant damages." (*Id.* ¶ 81).

These allegations, either alone or together, amount to nothing "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]" and the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that fall far short of the pleading standards required by the Rules. *Iqbal*, 556 U.S. at 678 (quotation omitted). Ultimately, Banuchi's second amended complaint fails to articulate facts that would carry her negligent training, supervision, and retention claims past the pleading stage. Indeed, Banuchi does not appear to disagree, instead proffering to the Court that she has since gathered evidence that would now support her claim. (Pl.'s Resp. at 12 (pointing to "evidence garnered through discovery" that would support her claims, as shown in a proposed amended complaint[4]).) Because the Court finds subpart (E) due to be dismissed for its failure to articulate enough facts to state a plausible claim for relief, it declines to address the other bases for dismissal the Defendants present.

---

[4] As addressed previously, Banuchi's earlier motion, seeking leave to file this third amended complaint, was denied. (Order on Mot. for Recon.)

### 4. Conclusion

To recap, the Court **grants** the Defendants' motion **in part, and denies it, in part** (**ECF No. 33**). The Court dismisses subparts (A), (D), and (E) of count ten, Banuchi's wrongful-death claim, with prejudice, based on her failure to state a claim. Alternatively, subpart (A) is dismissed as being time barred, as agreed to by the parties. Because the Court finds the Defendants waived the argument, as far as this second motion to dismiss is concerned, it denies their request to strike certain damages claims, as presented in Banuchi's prayer for relief.

This case will then proceed as to count one, for violations of the Fourth Amendment, against Green, and as to count ten, for wrongful death, based on battery, as set forth in subparts (B) and (C), against Green and the City, respectively. The Defendants must respond to what remains of the second amended complaint on or before **October 12, 2021**.

**Done and ordered**, in Miami, Florida, on September 29, 2021.

Robert N. Scola, Jr.
United States District Judge